IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. |
| | ) | 5:21-cr-00009-LGW-BWC-4 |
| | ) | |
| | ) | |
| ANTONIO CHAVEZ RAMOS | ) | |
| a/k/a Tony Chavez | ) | |

MOTION TO DISMISS FOR MISJOINDER

Comes now Defendant Antonio CHAVEZ Ramos, by and through undersigned counsel, and hereby files this Motion to Dismiss. The Grand Jury violated Fed.R.Crim.P. 8(b) by indicting Defendants who are not linked by a common "act or transaction, or in the same series of acts or transactions …'.

Mr. Chavez will first review the indictment, with a breakdown of the allegations against (at least) three distinct groups of Defendants. Next, he will go over the rules used to evaluate whether an indictment properly joined multiple Defendants. Finally, Mr. Chavez will show that the Government here violated Fed.R.Crim.P. 8(b) when it joined together three groups whose individual alleged crimes do not have a sufficient common link.

**THE INDICTMENT**

The October 5, 2021 indictment alleges a wide-ranging scheme to supposedly engage in mail fraud and money laundering as part of

a forced labor trafficking scheme. All 24 Defendants are named in three separate conspiracies (mail fraud, forced labor and money laundering). A few Defendants are named in substantive wire fraud or forced labor crimes. Three Defendants are charged with trying to influence a Grand Jury Witness. **Mr. Chavez is charged in the three conspiracy charges, the object of which were to commit mail fraud, forced labor crimes, and money laundering. He is also charged with the substantive count of Forced Labor under 18 U.S.C. § 1589(b).**

In its "speaking indictment" the Government sets out in paragraphs 14-37 its basic view of both the allegations and the role of each Defendant. A close review demonstrates that the Government has brought charges against (at least) three groups, that are not sufficiently connected with one another.

- "Group A" appears to consist of Maria Patricio and direct associates (including her family) whose alleged conduct involves the filing of fraudulent H-2A petitions; **"Group A" will herein be referred to as the "Maria Patricio Petitions Group."** Defendants in this group are alleged to have committed mail fraud in the mailing of the fraudulent petitions, with intentional participation in the overall scheme to commit forced labor. While unclear from the Indictment or discovery, it appears that the "serious harm"

2

alleged against this group of Defendants, in order to prove the underlying Forced Labor crimes, is centered upon financial harm, violations of civil labor laws like "pay[ing] foreign workers in cash without pay stubs" (¶ 51), or "requir[ing] the foreign workers to pay for their border crossing fees, transportation fees, lodging fees, and food expenses," and other similar labor violations that can be argued as enough to justify "serious financial harm." It seems appropriate to also include in this group the Defendants accused of forced labor related to the accidental, not-causally-connected death of a worker due to heat stroke. See Indictment, Paragraph 63, subparagraphs w-y.  As best can be identified from the Indictment, Group A appears to include 5 Defendants: Maria Leticia Patricio, Daniel Mendoza, Antonio Chavez Ramos, JC Longoria Castro, and Victoriano Chavez Hernandez. See Indictment, ¶¶ 14-37, ¶ 63, sub-paragraphs a-hhh.

- "Group B" appears to consist of Defendants who are alleged to have committed intentional acts of forced labor through physical force or threats of force or manipulation of law. For the conspiracy alleged in count eight (8) against Mr. Chavez and all other twenty-two (22) co-Defendants, the offense included the "kidnapping" of four (4) victims, along with "aggravated sexual abuse" and an "attempt to kill" of two others. Indictment, ¶ 70.

3

Allegations here include "forc[ing] foreign workers to work in agriculture fields…for little to no pay," (¶ 50), or "forc[ing]" foreign workers to live in crowded, unsanitary, and degrading conditions," (¶ 52), while "threaten[ing] workers with deportation or violence…" (¶ 53), "confiscate[ing] their passports…to prevent the workers from leaving or contacting law enforcement," (¶ 49) or "forcing foreign workers to pay additional fees to get their passports and H-2A visas back from conspirators" (¶56). **"Group B" will herein be referred to as the "Withholding Documents & Physical Force Group."** As best can be identified from the Indictment, Group B appears to include about 7 Defendants: Nery Rene Carrillo-Najarro, Enrique Duque Tovar, Jose Carmen Duque Tovar, and Charles Michael King, Stanley Neal McGauley, Gumara Canela, and Daniel Merari, including also few Defendants who overlap with the other main groups – like Maria Patricio, Daniel Mendoza, and Donna Rojas (as examples but not an exclusive list). See Indictment, ¶¶ 14-37; ¶ 63, sub-paragraphs a-hhh.

- "Group C" appears to consist of Defendants who are named in specific acts of money laundering (alleged in paragraph 76, sub-paragraphs a-v) and their associates who filed fraudulent H-2A petitions completely separate and apart from the filings involved with the "Maria Patricio Petitions Group." **"Group B" will**

4

**herein be referred to as the "Rojas Family Petition & Laundering Group."** As best can be identified from the Indictment, Group C appears to include 12 Defendants: Luis Alberto Martinez, Delia Ibarra Rojas, Juana Ibarra Carrillo, Donna Michelle Rojas, Margarita Rojas Cardenas, Juan Francisco Campos, Rosalva Garcia Martinez, Esther Ibarra Garcia, Rodolfo Martinez Maciel, Brett Donavan Bussey, Linda Jean Facundo, and Carla Yvonne Salinas. See Indictment, ¶¶ 14-37, ¶ 63, sub-paragraphs a-hhh.

Paragraphs 14-24 alleges a series of connections between and crimes committed by the first eleven named Defendants. Paragraphs 25-34 allege crimes and connections by the next ten named Defendants.  Finally, paragraphs 35-37 allege connections among and crimes committed by the last three named Defendants. Paragraphs 63-a through 63-iii allege the "overt acts" allegedly in furtherance of the supposed mail fraud conspiracy set out in the first Count.[1]

While these paragraphs demonstrate internal connections among some members in each of the three groups, there is no allegation of a connection between the groups. The same is true for the remaining counts of the indictment. While Defendants who are members of different groups may ultimately be charged with the

---

[1] There are no overt acts or means/manner of the conspiracy alleged for any of the conspiracy charges other than mail fraud.

5

same offense violations of the U.S. code, the evidence that would be used to prove guilt of the Defendants in a separate group is different, unrelated, and likely inadmissible against the Defendants in the separate group. **To illustrate, while Mr. Chavez may be ultimately charged with mail fraud and forced labor as part of his involvement with Group A, he has no connection whatsoever to Group C (nor does the Indictment or evidence suggest a connection); therefore, the evidence that is ultimately presented to prove mail fraud and forced labor against the Defendants in Group C is not admissible nor relevant to Mr. Chavez's prosecution. The only common connection amongst all Defendants (and the resulting Groups A, B, and C) is that all of the alleged crimes arose out of the farm labor context in the Southern District.**

The Government has lumped charges together in a single indictment that are not connected to one another, except for the subject matter. This is insufficient to join all 24 accused individuals in the same case. Even if joinder is appropriate and dismissal is denied, Mr. Chavez's case should be severed from the other Defendants pursuant to Fed.R.Crim.P. 14.[2] The Government has lumped together in one indictment charges that are not connected

---

[2] Defendant has filed a separate Motion showing that severance, in the alternative of dismissal for misjoinder, is another appropriate remedy available to the Court.

6

to one another. The face of the indictment clearly shows that the grand jury violated Rule 8 by lumping together all of the Defendants in this case and the Indictment should be dismissed for proper re-charge.

**LEGAL STANDARDS ON JOINDER**

Mr. Chavez will first review the language of the Rule. Next, Defendant will discuss the focus of the Court's inquiry, and the policy considerations behind either allowing or disallowing joinder.

**A. The Rule**

Rules for joining charges or individuals are found at Rule 8 of the Federal Rules of Criminal Procedure. Rule 8(b) describes situations in which multiple Defendants can be charged together in the same indictment.

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

**B. Focus of the Inquiry**

Joinder can be challenged in a variety of ways and at various points during a federal criminal case. Mr. Chavez will first look

7

at cases discussing where a Court should focus its inquiry when joinder is challenged prior to trial.

When initial joinder is challenged prior to trial, the Rule 8(b) analysis requires an examination of the allegations stated on the face of the indictment. United States v. Weaver, 905 F. 2d 1466, at 1476 (11th Cir. 1990)(finding improper joinder against two Defendants named in cocaine conspiracy but not in marijuana conspiracy alleged against remaining Defendants); United States v. Morales, 868 F. 2d 1562, 1567 (11th Cir. 1989).
Judge Kaplan in the Southern District of New York applied this principle in United States v. Stein, 2008 WL 2971586 (S.D. N.Y. July 31, 2008).  Counts 1-40 alleged conspiracy and substantive charges there against a group of Defendants arising out of a tax shelter scheme.  Counts 41-44 only related to the supposed unreported income for a Defendant named Ruble.  At first, Judge Kaplan denied a Motion challenging the joinder of all these counts together.  Later, the Judge noted that the proper inquiry looks only at the face of the indictment and does not assess any possible evidence that might arise at trial.  Judge Kaplan noted that while the Government claimed that the evidence at trial would show that the unreported income at issue in Counts 41-44 came from the tax shelter scheme, the indictment itself made no

8

such explicit connection. As a result, the Court held that Counts 41-44 were improperly joined with the remaining charges.

At this stage the Court must focus solely on the allegations in the indictment. Sometimes, Judges are tempted to hypothesize that there are connections between certain charges or Defendants. Courts have routinely rejected this practice. In United States v. Mackins, 315 F. 3d 399 (4th Cir. 2003) the Fourth Circuit found improper joinder when bank fraud charges against one Defendant were combined with drug and money laundering charges against that Defendant and two others who were not named in the bank fraud allegations. Just as in the present indictment, the only thing the various charges in Mackins had in common with each other was that one of the individual Defendants was named in each Count. However, "the indictment does not allege any explicit connection between [the bank fraud and drug and money laundering charges]." The District Judge had denied the Defendants' pretrial misjoinder motions by hypothesizing that the bank fraud could have been used as part of the money laundering caper. However, nothing in the indictment itself supported this hypothesis, and there were no allegations of any such connection. As a result, the joinder there was found to be improper. See also United States v. Diaz-Munos, 632 F.2d 1330, 1335-36 (5th Cir. 1980) (reversing conviction based on improper joinder where the indictment charged fraud and

9

embezzlement offenses and tax offenses that *were not part of the same series of transactions*)(emphasis added).

When a Defendant challenges joinder of individuals prior to a federal criminal trial, the Court must look only at the face of the indictment. Hypothesizing about some connection between charges and individuals is improper. With this focus in mind, Mr. Chavez will next turn to some of the policies underlying Fed.R.Crim.P. 8(b).

### C. Policies Behind the Rule

Courts often note that Rule 8 is designed to promote "judicial economy". However, this is not the only purpose of the Rule. A "countervailing purpose of Rule 8(b) is to prevent the cumulation of prejudice growing out of charging several Defendants with similar but unrelated offenses." United States v. Weaver, supra (citations and internal quotations omitted). "When…the connection between different groups is limited to a few individuals common to each but those individuals commit separate acts which involve them in separate offenses with no common aim, then the requisite substantial identity of facts or participants is not present." Id., quoting United States v. Nettles, 570 F. 2d 547, 551 (5th Cir. 1978). In other words, a pretrial challenge to joinder requires that the Court balance judicial efficiency against the prejudice

10

to Defendants who are forced to endure a trial where lots of evidence not admissible against them will be heard.

Furthermore, the goal of judicial economy can often be better achieved through a severance of improperly joined counts.[3] United States v. Mackins, supra, demonstrates this principle. The Government in Mackins pointed to the "judicial economy" policy when arguing that joinder was proper. The Fourth Circuit rejected this contention.

> [W]e note that the joinder of the counterfeit check counts involving only Willie Mackins with the drug and money laundering conspiracy charged against Mackins and all other defendants offered minimal advantages in terms of judicial efficiency. When, as here, "the offenses [arose] out of separate and unrelated transactions, there is ... little saving in time and money in having a single trial."

Id., 315 F. 3d at 413, n. 7. Accord, United States v. Sprouse, 2009 WL 426547 at *5 (W.D. N.C. Feb. 19, 2009)(finding improper joinder of perjury and obstruction charges naming one Defendant when charges were included in indictment against other Defendants).

---

[3] Defendant has filed a separate Motion showing that severance, in the alternative of dismissal for misjoinder, is another appropriate remedy available to the Court.

11

**JOINDER HERE IS IMPROPER**

Under Rule 8(b), joining all of these Defendants together in a single indictment is improper. The indictment does not allege that the separate Defendants all participated in the "same act or transaction." Likewise, the Grand Jury did not allege that all of the Defendants engaged "in the <u>same</u> series of acts or transactions." As a result, joinder is improper and the Court must dismiss the improper indictment or order a severance of the Defendants from one another.[4]

The only aspects in common are allegations that all of the crimes arose out of farm labor activities in the Southern District. There are no allegations that the three separate groups knew each other or operated in common with one another. The indictment does not make factual allegations common to all counts, other than the obvious facts about the operation of the farm labor industry. These allegations are not sufficient to join the three separate and disparate groups of Defendants together in a single indictment.

The Defendants will suffer obvious prejudice if they are forced to endure a trial on these improperly joined Counts. The cure for this prejudice is to force the Government to comply with

---

[4] Defendant has filed a separate Motion showing that severance, in the alternative of dismissal for misjoinder, is another appropriate remedy available to the Court.

Rule 8(b) and get separate indictments against each of the three groups of Defendants. As a result, Mr. Chavez asks that this Court recommend that this Motion be granted.

Dated: This 15th day of December, 2023.

*/s/ Jessica K. Stern*
JESSICA K. STERN
Georgia State Bar No. 107308
ATTORNEY FOR ANTONIO CHAVEZ RAMOS

STERN Law, LLC
1100 Spring Street NW, Suite 400
Atlanta, Georgia 30309
404-990-4112; Fax 404-990-4936
jessica@sternlawfirm.us

CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing filing into this District's ECF System, which will automatically forward a copy to counsel of record in this matter.

Dated: This 15th day of December, 2023.

*/s/ Jessica K. Stern*
JESSICA K. STERN
Georgia State Bar No. 107308
ATTORNEY FOR ANTONIO CHAVEZ RAMOS

STERN Law, LLC
1100 Spring Street NW, Suite 400
Atlanta, Georgia 30309
404-990-4112; Fax 404-990-4936
jessica@sternlawfirm.us